**FILED**
**DECEMBER 13, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**07 C 7018**

| | | |
|---|---|---|
| JAMES and LEE ANNE D., Individually and as Next Friends of Sarah D., a Minor,<br>    Plaintiffs<br><br>v.<br><br>Board of Education of Aptakisic-Tripp Community Consolidated School District No. 102 and Illinois State Board of Education,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>**JUDGE DOW**<br>**MAGISTRATE JUDGE MASON** |

## COMPLAINT

NOW COME PLAINTIFFS JAMES and LEE ANNE D., Individually and as Next Friends of SARAH D., a Minor, by and through their attorneys, MONAHAN & COHEN, and as their Complaint, state as follows:

### INTRODUCTION

1.  This cause of action arises from the efforts of James and Lee Anne D. to enforce the right of their daughter to a free appropriate public education ("FAPE"). This action is a timely appeal of an administrative ruling issued by Impartial Hearing Officer James A. Wolter, Ed.D. ("IHO") on November 7, 2007, rendered following a three day special education due process hearing pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1401 *et seq*. *See* Decision and Order, attached as **Exhibit A**.

2.  The IHO's Decision and Order is being appealed because of (a) significant incorrect procedural rulings before and during the administrative hearing that substantially

affected the scope of the evidence to the detriment of James and Lee Anne D. and Sarah D. ("Sarah"), (b) the IHO's misapplication of important legal standards under the IDEA, (c) errors in findings of fact, and (d) improprieties committed by the IHO that bring his impartiality into question.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(2).

4.      Venue is properly situated in this Court because the acts complained of occurred and the parties reside in, or do business in, the Northern District of Illinois.

## PARTIES

5.      Sarah is a nine year old girl who has dyslexia and a language impairment. Although Sarah is in fourth grade and has an average IQ, at the beginning of this school year, she was functioning below the first grade instructional reading level. Sarah's written expression skills are also severely impaired and she is more than a year behind in math skills, despite her participation in District 102's instructional program for three years.

6.      James and Lee Anne D. are Sarah's father and mother, respectively. At all times pertinent, James and Lee Anne D. ("Parents") have been legal residents of Buffalo Grove, Illinois and taxpayers in Aptakisic-Tripp Community Consolidated School District 102.

7.      Defendant Aptakisic-Tripp Community Consolidated School District 102 ("District 102"), which serves residents of Buffalo Grove, among other suburbs of Chicago, is a school district located in the Northern District of Illinois and is a body politic and corporate organized pursuant to the Illinois School Code. By federal and state law, District 102 is

responsible for ensuring that students with disabilities residing within its District, are provided with a free appropriate public education (FAPE). 20 U.S.C. § 1415(a); 105 ILCS § 5/14-1 *et seq.*

8. Defendant Illinois State Board of Education ("ISBE") is the state educational agency authorized and required to establish a procedure for resolving disputes between students and their parents and local school districts under IDEA. ISBE has been named in this action for purposes of filing the administrative record in this case.

## OVERVIEW OF APPLICABLE LEGAL STANDARDS

9. The IDEA, formerly the Education of All Handicapped Children Act, 20 U.S.C. § 1400 *et seq.*, was enacted to ensure that all children with disabilities in the United States are provided with FAPE. 20 U.S.C. § 1414(d).

10. A FAPE is defined in IDEA as special education and related services provided at public expense, under public supervision and direction, and without charge that is provided in conformity with the child's Individualized Education Program ("IEP"). 20 U.S.C. § 1401(9); 34 CFR § 300.17, § 300.39.

11. The IDEA and its implementing regulations permit placement in special classes, separate schools, or other removal of children with disabilities from the regular educational environment when the nature and severity of the disability is such that education in a regular or integrated class with the use of supplementary aids and services cannot be achieved satisfactorily. The school district must offer a continuum of placements to implement the child's IEP and to provide a FAPE. 20 U.S.C. § 1412(a)(5); 34 CFR § 300.115.

12. The school district must develop an IEP for each child with a disability that includes measurable goals calculated to provide the child meaningful educational benefit. 20 U.S.C. § 1414; 34 CFR § 300.320.

13.     The IEP is the "modus operandi" of the entitlement to a FAPE. *Sch. Com. of the Town of Burlington v. Dept. of Educ. of Massachusetts*, 471 U.S. 359, 368 (1985).

14.     "Meaningful educational benefit" requires that a student receiving special education must achieve more than "de minimis" or trivial progress to receive a FAPE. *Polk v. Central Susquehanna Intermed. Unit 1,* 853 F.2d 171 (3rd Cir. 1988).

15.     The IDEA also contains procedural safeguards established to protect parents and allow them meaningful participation in their child's education, and dictates, among other things, how school districts must obtain parental consent, conduct meetings, give prior written notice to changes in the child's educational program, provide the parent with progress reports, review evaluations and other current information concerning a child, and develop appropriate IEPs for the student. 20 U.S.C. § 1414, § 1415.

16.     If a parent provides a school district with an independent evaluation, the district must convene an IEP meeting within ten days after receiving the evaluation report in order for the IEP team to consider the results. 34 CFR § 300.305. 23 ILL. ADMIN. CODE § 226.180.

17.     A school is required to use peer reviewed, scientifically based methodologies to educate a disabled child, to the extent practicable. 34 CFR § 300.320; § 300.35.

18.     A student's special education placement must be based on the student's IEP. 20 U.S.C. § 1401(a); *Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist.*, 930 F.Supp. 83 (S.D. N.Y. 1996). It is a violation of FAPE for the school to predetermine a student's placement, particularly based on reasons other than a student's educational needs. *See, e.g., Speilberg v. Henrico County Public Sch.*, 853 F.2d 256 (4th Cir. 1988).

19.     Federal and state law provide parents the right to request an impartial due process hearing if they disagree with any matter related to the identification, evaluation and educational

placement of the child, or the provision of FAPE to the child. 20 U.S.C. § 1415(b)(6) and (d)(2)(j). 105 ILCS 5/14-8.02a.

20. A parent is entitled to have the hearing held at a neutral site. 105 ILCS 5/14-8.02a(g).

21. A parent may complain about IDEA violations that occurred up to two years before the parent requests a due process hearing, and, in some cases, may complain about events occurring more than two years before the hearing request. *See* 20 U.S.C. § 1415(b)(6); 34 CFR § 300.507.

22. The IDEA has been interpreted to put the burden of proof on the moving party, typically the parents of a disabled child, and consequently requires that the parent have equal access to the information related to the student with a disability held by the school district. *Schaffer v. Weast*, 126 S. Ct. 528 (2005).

## FACTS

23. District 102 placed Sarah, a student with dyslexia and a specific learning disability, in an instructional special education classroom with students of varying disabilities and abilities for the last three school years, from 2004 through 2007.

24. Over this three year period, District 102 offered Sarah's Parents no other placement or classroom in which to address Sarah's learning disabilities.

25. During the 2006-2007 school year, Sarah spent 95% of her time in the District 102 instructional program working one on one with her teacher or an aide, without peer interaction. Sarah spent approximately thirty minutes of each day's instruction working on a computer by herself.

26. Over the three years that Sarah spent in District 102's instructional program, her time in the special education classroom increased from 800 minutes per week to 990 minutes per week, her time included in regular education decreased, and she was increasingly isolated in her instruction. An aide accompanied Sarah when she was mainstreamed into a regular classroom and Sarah required three pages of accommodations and modifications in the regular classroom.

27. During the three years that Sarah remained in District 102's instructional program, Sarah did not achieve any of the reading, writing, or speech/language IEP goals written by District 102 and achieved very few of the math goals written for her by the District.

28. Although Sarah did not accomplish her IEP goals, District 102 decreased Sarah's speech language services.

29. On some of Sarah's IEP goals, the District failed to write a statement of the criteria necessary for Sarah to achieve the goal. On some goals the District did not indicate how any progress on the goal would be determined.

30. The District psychologist completed curriculum based testing of Sarah at the end of her third grade year and indicated that Sarah's reading fluency remained below a first grade instructional level.

31. During the time Sarah was placed in the District's program, Sarah's standardized achievement test scores in reading decoding, reading comprehension, spelling, math and language dropped or did not significantly change.

32. Sarah's IEP for first grade indicated a reading level at the end of kindergarten. Sarah's IEP for fourth grade indicates that her reading level is still only at first grade fourth month level. This represents approximately six months of progress in reading level after three years of instruction from the District.

33.     At the end of third grade, Sarah was crying at home due to her unhappiness at school, stated that she did not want to return to school and that she did not know how to read.

34.     On May 31, 2007, Sarah's Parents, with proper notice to the District, unilaterally placed Sarah in the summer program at Hyde Park Day School, a specialized school for students with learning disabilities.  On July 18, 2007, with proper notice to the District, Sarah's Parents unilaterally placed her at Hyde Park Day School for the 2007-2008 school year.

35.     Despite the District's claim that it provided Sarah with three years of multi-sensory reading instruction, Sarah began instruction at a basic, pre-primer reading level at Hyde Park Day School, based on her test scores and reading performance.

36.     Sarah is making progress at Hyde Park Day School, where she receives specialized educational and related services integrated throughout her whole school day, and where she receives more speech and language services, more social work services, and more occupational therapy than District 102 offered to Sarah.

## COUNT I

### THE IHO's DECISION AND ORDER SHOULD BE OVERTURNED BECAUSE THE IHO MISAPPLIED IMPORTANT IDEA STANDARDS

37.     Plaintiffs repeat and reallege Paragraphs 1 through 36 and incorporate them herein by reference.

38.     After making various findings that Sarah did not master her IEP goals over a period of three years, that her IEP goals were continually repeated, and that Sarah progressed from 70% to 77% mastery on one IEP goal in three years, the IHO erroneously determined that Sarah had made more than de minimis progress and that continuing the school's program had and would continue to provide her a FAPE.

39. The IDEA requires that a school write and implement an IEP that provides meaningful educational benefit, and that allows a child to make more than minimal progress. Contrary to the IDEA and prevailing case law, the IHO utilized a self-created FAPE standard, which lowered the requirement of FAPE to a meaningless level and based his endorsement of the school's program on this impermissible lower standard.

40. Despite consistent testimony and documentation that Sarah had not achieved her IEP goals, had not progressed on curriculum based measures, and had not progressed on standardized tests, the IHO ignored objective documentation in favor of subjective and self serving statements of school staff at the hearing, after the fact, that Sarah had made progress.

41. Pursuant to the IDEA, the measurable goals and objectives in the IEP of a student with a disability are the "modus operandi," or basis of the student's special education. By ignoring Sarah's inability to achieve the same IEP goals over three years in the District's program, the IHO incorrectly reduced Sarah's IEP from the penultimate document described in the IDEA to a meaningless piece of paper.

42. The IHO found that Sarah's parents had meaningfully participated in discussions regarding Sarah's special education although District personnel had considered the Parents' independent evaluation outside of an IEP meeting, without the Parents, and rejected the evaluation without discussion at a meeting with Sarah's Parents.

43. By this ruling, the IHO reduced the IDEA's procedural requirement of "meaningful participation" to meaningless participation, and ignored federal and state law requirements that districts review evaluations with parents.

44. The IHO misinterpreted and misapplied the standard of least restrictive environment ("LRE") by elevating its importance to be greater than the right to FAPE, in contravention of prevailing case law.

WHEREFORE, Plaintiffs respectfully request that this Court:

1) Receive and review the record of the administrative proceedings below from the Illinois State Board of Education;

2) Supplement the record and hear additional evidence from the Parents, as the Court deems appropriate;

3) Overturn the IHO's Decision and Order;

4) Order the District to assume financial responsibility for Sarah's placement at Hyde Park Day School, a private special education facility specializing in learning disabilities, or a comparable facility if the parents move her in the future for any reason;

5) Order the District to reimburse the parents for the cost incurred to day as a result of the unilateral placements at Hyde Park Day School and related clinical and transportation expenses;

6) Award Plaintiffs reasonable attorney fees; and

7) Order any relief in favor of Plaintiffs that this Court deems just.

## COUNT II

### THE IHO's DECISION AND ORDER MUST BE OVERTURNED
### DUE TO SIGNIFICANT ERRONEOUS PROCEDURAL RULINGS

45. Plaintiffs repeat and reallege Paragraphs 1 through 44 and incorporate them herein by reference.

46. In a recent decision, the United States Supreme Court held that the moving party in an IDEA due process hearing has the burden of proof and that parents and their evaluators should have equal access to the school's information related to the student with a disability.

47. In contravention of this Supreme Court decision, the IHO denied the Parents' request for Sarah's evaluator to observe the classroom proposed for Sarah by the District, thereby preventing Parents from obtaining information about the class.

48. Before the hearing and before any testimony was given, the IHO excluded documents filed by the District with ISBE, and tendered by Sarah's Parents, regarding the pattern of decreasing numbers of out of district, private special education placements made by the District. This evidence is relevant because it shows the District's pattern and practice of not providing special education students with out of district placements. A child's placement must be based on her needs, not the district's financial or philosophical policies. A District must offer a continuum of special education services and placements.

49. Before the hearing and before any testimony was given, the IHO excluded evidence tendered by the Parents regarding the District's philosophy of "inclusion," as described in a presentation written by the District's special education director, and published on the District's website. This evidence is also relevant to show that the District tends to act according to its philosophy, rather than according to the individual needs of students, such as Sarah.

50. During the hearing, the IHO refused to allow the Parents' private evaluator to testify about the comparison of Sarah's most recent standard test scores.

51. The IHO's multiple rulings improperly limited the scope of evidence at the hearing to the detriment of Sarah and her Parents.

52. In contravention of the Illinois School Code, which requires that the hearing be held at a neutral location, at the request of a parent, if such a location can be arranged free of cost, the IHO denied the Parents' request for a neutral location. Due to the IHO's refusal of a

neutral setting, Sarah's mother was uncomfortable at a site at which she had previously been employed and knows almost all staff members and parents.

W HEREFORE, Plaintiffs respectfully request that this Court:

1) Receive and review the record of the administrative proceedings below from the Illinois State Board of Education;

2) Supplement the record and hear additional evidence from the Parents, as the Court deems appropriate;

3) Overturn the IHO's Decision and Order;

4) Order the District to assume financial responsibility for Sarah's placement at Hyde Park Day School, a private special education facility specializing in learning disabilities, or a comparable facility if the parents move her in the future for any reason;

5) Order the District to reimburse the parents for the cost incurred to day as a result of the unilateral placements at Hyde Park Day School and related clinical and transportation expenses;

6) Award Plaintiffs reasonable attorney fees; and

7) Order any relief in favor of Plaintiffs that this Court deems just.

## COUNT III

### THE IHO's DECISION AND ORDER SHOULD BE OVERTURNED BECAUSE THE IHO INCORRECTLY BLAMED THE PARENTS FOR THE DISTRICT'S FAILURE TO PROVIDE A FAPE.

53. Plaintiffs repeat and reallege Paragraphs 1 through 52 and incorporate them herein by reference.

54. The IHO blamed Sarah's Parents for her lack of progress because they did not send Sarah to the District's four week summer school program. The IHO ignored the uncontested testimony that Sarah's Parents paid the District's special education teacher to tutor Sarah one summer, enrolled Sarah in intensive reading tutoring one summer, and placed her at Hyde Park Day School a third summer. The District provided no evidence regarding its summer

11

school program, did not include goals for summer instruction in Sarah's IEP for two of three summers, and did not include a complete set of goals for summer, extended school year, in any IEP.

55.     The IHO also blamed Sarah's Parents for her lack of progress because they wanted Sarah to remain in the regular classroom for social studies and science instruction. This conclusion was clearly against the weight of the testimony and the written record of the IEPs, which indicated that school staff believed and agreed that Sarah should remain in regular social studies and science.

56.     The conclusion that Sarah's Parents, rather than the District, required inclusion is contrary to Sarah's IEP and the family's request for relief in their request for a due process hearing.

57.     Despite Sarah's almost total lack of progress in key academic areas, the IHO erroneously concluded that the de minimis increase in minutes of service form the district was sufficient to satisfy their educational obligations.

58.     The IHO illegally held Sarah's Parents responsible for her FAPE, rather than holding the School District responsible for providing a FAPE.

WHEREFORE, Plaintiffs respectfully request that this Court:

1) Receive and review the record of the administrative proceedings below from the Illinois State Board of Education;

2) Supplement the record and hear additional evidence from the Parents, as the Court deems appropriate;

3) Overturn the IHO's Decision and Order;

4) Order the District to assume financial responsibility for Sarah's placement at Hyde Park Day School, a private special education facility specializing in learning disabilities, or a comparable facility if the parents move her in the future for any reason;

    5)    Order the District to reimburse the parents for the cost incurred to day as a result of the unilateral placements at Hyde Park Day School and related clinical and transportation expenses;

    6)    Award Plaintiffs reasonable attorney fees; and

    7)    Order any relief in favor of Plaintiffs that this Court deems just.

## COUNT IV

### THE IHO's DECISION AND ORDER SHOULD BE OVERTURNED DUE TO FINDINGS OF FACT THAT WERE CLEARLY ERRONEOUS.

59. Plaintiffs repeat and reallege Paragraphs 1 through 58 and incorporate them herein by reference.

60. The IHO erroneously concluded that Sarah's Parents had prevented the IEP team from placing Sarah in a full day self-contained special education placement when both the written record and testimony indicated that school staff, other than the special education teacher, disagreed with a full day self-contained placement at the District for Sarah.

61. The IHO's conclusion that Sarah progressed from seventy percent to seventy-seven percent on one IEP goal is erroneous. A review of the transcript indicates that the comparison of percentages was based on averaging different reading skill units such that a direct comparison of Sarah's performance over time was not even possible.

62. The IHO erroneously dismissed the testimony of two private evaluators who indicated that, based on her I.Q. and learning characteristics, Sarah should make approximately nine months gain in reading over each school year, given an appropriate reading program. The IHO ignored the testimony of Sarah's special education teacher for three years, who also indicated that she expected Sarah to make nine months of reading progress in a school year.

13

63. The IHO erroneously dismissed the differences in administration between two MAP tests that the District alleged indicated that Sarah had made progress, by illogically assuming that Sarah, despite her dyslexia, would make equivalent progress on math and reading tests, and by ignoring test documentation in the record indicating that Sarah received twice as much time to complete the reading test.

64. In direct contravention of the testimony, the IHO erroneously found that Sarah had received only one hour of instruction per week for two summers, at the expense and choice of Sarah's Parents.

65. In direct contravention of the testimony of District staff, the IHO found that the District offered Wilson reading methodology while Sarah was a student at the District. District staff indicated that a preliminary Wilson training was held after Sarah's Parents placed her at Hyde Park Day School. Hyde Park Day School uses Wilson as one of its teaching methodologies.

66. Contrary to the Hyde Park principal's testimony, and Sarah's Individual Learning Plan at Hyde Park Day School, the IHO incorrectly found that the private day school does not individualize its program to the individual needs of students.

67. The IHO's dismissal of the reports and testimony of Sarah's private evaluators because they had never taught Sarah is absurd and was made without any evidentiary basis, in contravention of the IDEA requirement that all Independent Educational Evaluations be considered. Furthermore, the IHO ignored the testimony of Sarah's special education teacher, who had taught Sarah for three years, that Sarah should be expected to make six to nine months progress each school year. The special education teacher's expectations were consistent with those of the private evaluators.

68.     The IHO found that there was no basis in the District's testimony to find that the District's instructional program was more restrictive than Hyde Park Day School. The IHO ignored the special education teacher's testimony that Sarah spent ninety-five percent of her time in the District's program in a one on one situation with no peer interaction, that Sarah worked individually with a classroom aide for sixty minutes per day, that Sarah spent thirty minutes per day working by herself on a computer, that sometimes no other student was even in the classroom, and that Sarah worked with a group of other students in the District instructional program for only fifteen minutes per day. In contrast, Sarah works in small and large groups of peers the entire day at Hyde Park Day School.

69.     The IHO made many findings that were not only clearly erroneous, but that misrepresented and manipulated the evidence in favor of the District.

WHEREFORE, Plaintiffs respectfully request that this Court:

1) Receive and review the record of the administrative proceedings below from the Illinois State Board of Education;

2) Supplement the record and hear additional evidence from the Parents, as the Court deems appropriate;

3) Overturn the IHO's Decision and Order;

4) Order the District to assume financial responsibility for Sarah's placement at Hyde Park Day School, a private special education facility specializing in learning disabilities, or a comparable facility if the parents move her in the future for any reason;

5) Order the District to reimburse the parents for the cost incurred to day as a result of the unilateral placements at Hyde Park Day School and related clinical and transportation expenses;

6) Award Plaintiffs reasonable attorney fees; and

7) Order any relief in favor of Plaintiffs that this Court deems just.

## COUNT V

### THE IHO's DECISION AND ORDER SHOULD BE OVERTURNED DUE TO IMPROPRIETIES COMMITTED BY THE IHO THAT UNDERMINED HIS IMPARTIALITY.

70. Plaintiffs repeat and reallege Paragraphs 1 through 69 and incorporate them herein by reference.

71. Before the hearing, the IHO engaged in an ex parte conversation with the School District's attorney, which resulted in the IHO changing the evidence disclosure date the day before evidence was due. After the ex parte conversation, the IHO refused to recuse himself from the case and told the School District attorney that he was concerned for the District if the school attorney defended the IHO's actions by responding to the motion for recusal.

72. The IHO required the Parents to present their case first, but then allowed the District to call its witnesses out of order, so that the school administrator could, in the IHO's words, "clean up" the District's case.

73. Additionally, the IHO refused to move the hearing to a neutral location, as requested by Sarah's Parents and required by the Illinois School Code. The IHO ordered that the hearing take place at a location convenient to District staff, and uncomfortable for Sarah's Parents.

74. The various improprieties committed by the IHO, demonstrated that the IHO was not impartial.

WHEREFORE, Plaintiffs respectfully request that this Court:

1) Receive and review the record of the administrative proceedings below from the Illinois State Board of Education;

2) Supplement the record and hear additional evidence from the Parents, as the Court deems appropriate;

16

    3)      Overturn the IHO's Decision and Order;

    4)      Order the District to assume financial responsibility for Sarah's placement at Hyde Park Day School, a private special education facility specializing in learning disabilities, or a comparable facility if the parents move her in the future for any reason;

    5)      Order the District to reimburse the parents for the cost incurred to day as a result of the unilateral placements at Hyde Park Day School and related clinical and transportation expenses;

    6)      Award Plaintiffs reasonable attorney fees; and

    7)      Order any relief in favor of Plaintiffs that this Court deems just.

                      Respectfully submitted,

                      s//Matthew D. Cohen_____
                      Matthew D. Cohen, One of the Attorneys for Plaintiffs

Matthew D. Cohen
Courtney N. Stillman
MONAHAN & COHEN
Attorneys for Plaintiffs
225 West Washington Street
Suite 2300
Chicago, IL  60606
(312) 419-0252
Dated:  December 13, 2007

F:\CASE\D\Complaint

17