**07 C 7018**

ILLINOIS STATE BOARD OF EDUCATION
SPECIAL EDUCATION DUE PROCESS HEARING

| | |
|---|---|
| IN THE MATTER OF<br>Sarah D▇▇▇▇<br><br>v.<br><br>APTAKISIC-TRIPP CCSD 102 | ) ISBE CASE NO. 2008-0022<br>)<br>) James Wolter
) Impartial Due Process
) Hearing Officer |

**JUDGE DOW**
**MAGISTRATE JUDGE MASON**

**Procedural Background:**
The parent requested a due process hearing by letter from their attorney dated July 18, 2007. It was received by the local education agency (district) on July 18, 2007 which extends the statute of limitation in this matter back to July 18, 2005 [Hearing Officer Exhibit A]. The request was forward to and received by the Illinois State Board of Education on July 24, 2007. The attorney for the district filed a response on July 26, 2007 [District Exhibit 68 pages 562-604]. The case was assigned to this hearing officer on July 30, 2007 [Hearing Officer Exhibit B].

The 45-day timeline for conducting a due process hearing was exceeded because of the attorneys' schedule. The parents had unilaterally placed the student in a private special education placement prior to requesting a due process hearing [Hearing Officer Exhibit C]. The resolution session was waived in favor of state-sponsored mediation. The parties were unable to resolve their differences through mediation.

The pre-hearing conference was conducted by teleconference on September 5, 2007 and continued to the close of business September 11, 2007 [Hearing Officer Exhibit D]. The report was revised on October 20, 2007 and then again at the Due Process Hearing on October 29, 2007 [Hearing Officer Exhibit E].

The parents' attorney filed an undated motion seeking leave to observe the district's programs over the district's objection. The motion was denied on September 28, 2007 [Hearing Officer Exhibit F]. The parents' attorney filed a motion on October 17, 2007 requesting the hearing officer recuse himself. The motion was denied on October 17, 2007 [Hearing Officer Exhibit G]. On October 19, 2007 the parents' attorney filed a motion to change the location of the due process hearing. It was denied on October 20, 2007 [Hearing Officer Exhibit H]. Subsequently, the hearing officer was able to have the parties agree to hold the due process hearing at the student's neighborhood school on October 29, 2007 and October 30, 2007 and in the district administrative office on October 31, 2007.

The district submitted 101 documents totaling 725 pages into evidence. The parent submitted 118 documents for placement into evidence. The district's attorney objected to Parent Exhibits H 98-270, H 277 and H 190 – 293 because they were not disclosed at the pre-hearing conference. The documents were not admitted into evidence because they did not speak to the issues raised in the due process hearing complaint and did not speak directly to the student. All other documents submitted by the parents and district were placed into evidence.



Illinois State Board of Education
Due Process System

11/7/2007
Page 2

The parent and the district jointly presented the following witnesses:*
1. Laura Boshart, Special Education
2. Nancy Connor, Regular Education Teacher
3. Jessica Eaton, School Psychologist
4. Sherry Manzella, Speech-Language Pathologist
5. Fannie Goldwin, School Social Worker

The parent presented the following witnesses:*
1. Walter Crnich, Private School Principal
2. Ama Thompson, Private Evaluator
3. Michael McCanna, Private Psychologist
4. Lee Ann D███, Mother

The district presented the following witnesses:**
1. Rebecca Jenkins, Principal
2. Megan Clark, Director of Student Services

\* The witnesses will be referred to by title rather than name in the remainder of this document to ensure the privacy of the student. In addition, the private day school will not be identified by name for that same reason.

It should be noted that the district's assistive technology specialist was not available to testify because of a medical emergency. Both parties were able to elicit the testimony they desired from her through other witnesses.

**ISSUES:** The issues of this due process are:**
1. Whether the district failed to provide the student with a reading program that enabled her to make meaningful progress per 20 U.S.C. 1414(d); 34 CFR 300.320.
2. Whether the district failed to provide the student with an appropriate IEP per 20 U.S.C. 1412(a); 34 CFR 300.320; 34 300.324; IAC 226226.230.
3. Whether the district failed to provide the student with an appropriate placement per 20 U.S.C. 1412(a)(5); 34 CFR 300.115.
4. Whether the district failed to address all the student's educational needs (specifically in language arts, math, executive functioning, and social-emotional) in addition to reading per 20 U.S.C. 1414(d); 34 CFR 300.320.
5. Whether the district failed to adequately consider private evaluations tendered by the parent per 34 CFR 300.324.

\*\* At the due process hearing the attorney stated that in listing the above issues at the pre-hearing conference the parent was not abandoning the issues stated in the original due process complaint of July 18, 2007. Therefore the discussion of facts and conclusions of law are applicable to the issues presented in the original complaint.

**RESOLUTION:** The resolutions sought in this due process hearing are:
1. The parent desires the hearing officer order the district to provide the student with

a special education placement in a private special education day school such as the Private Special Education Day School she currently attends and reimburse the parents for the tuition costs of that placement since June 2007.
2. The district desires the hearing officer find the least restrictive placement in which the student can obtain a free appropriate public education is the one offered her by the district in her neighborhood school per her May 3, 2007 IEP.

Attorneys represented both parties in this matter.

The hearing officer has jurisdiction to hear this matter under PA 94-1100, Section 14.02(g) of the Illinois School Code, 34 CFR 300.506-509, and 23 Illinois Administrative Code 226 Subpart G.

**Findings of Fact:**
1. The student is a 9 year 5 month old female in 4th grade. She is eligible for special education and related services under the category of Learning Disabilities and Speech/Language Disability. She completed 2nd and 3rd grade during the period covering the statute of limitation of this due process hearing. The mother testified that the parents first suspected the student may have developmental problems at around 2 or 2.5 years of age because of delayed speech. They presented the student for the district's early childhood screening at age 3. She was provided service for 3 – 5 year old children at risk through a district program called STAR. The student was provided an initial case study evaluation after kindergarten and found eligible for special education and related services. She has received instructional LD service (more than 50% of her school day in special education) and Speech/Language therapy in her neighborhood school for 2nd and 3rd grades. The student was provided related service in school social work and assistive technology. Occupational therapy was available but she did not require those services [District Exhibit page 271].
2. The district was concerned about the rate of the student's progress. It offered to increase the number of her special education minutes and offered the student an extended school year after 2nd and 3rd grades [District exhibit pages 213 and 515]. The parent was also concerned about the rate of the student's progress but desired the student to remain in a regular education classes and declined the district's offer for an extended school year in favor of employing a private tutor for one day per week during the summer after 1st and 2nd grade and unilaterally placing the student in an extended school year program offered by a private special education day school. District personnel testified that the student demonstrated regression during the summer and even over long school breaks. The same degree of regression was not observed over the 2007 summer while the student was in a structured extended school year program of 5-days per week [Parent Exhibits F20 and F31]..
3. The parent contends the district failed to provide the student with a reading program that enabled her to make meaningful progress as indicated in her failure to meet IEP criteria, performance on assignments and scores on standardized tests. The parent states that the repeating of goals and objectives from 1st through 3rd grade indicates the student failed to make progress. Additionally, the student's failure to achieve the master level listed on her IEP indicates she has not obtained benefit from the district program. Finally the parent asserts that the student's

score in the first percentile on the WAIT II in kindergarten and again in 3rd grade indicates that she did not make progress. The parent's attorney managed to elicit answers from the private evaluator and private psychologist to support that position. However, upon further questioning, the private evaluator acknowledged, as testified earlier by the school psychologist, that the WAIT II is not an instrument that measures individual student progress over time much less an instrument that measures a student's master of what was taught. It is an instrument that provides a snapshot of the student's performance compared to their peers at a given point in time. The private psychologist eventually acknowledged the intent of the WAIT II was not designed to measure a student's progress over time but stated that it could be used for that purpose. It is noted that he did not produce or provide documentation or citations from the publisher of the instrument to support his assertion. The school psychologist testified that a WAIT II is a comparison of student performance to their peers at a given time. It is not a measure of student progress over time. If one desired to do that one would have to examine the raw data because at the kindergarten level students are required to name letter of the alphabet while at the 3rd grade level they are required to read passages. The special education teacher testified that the goals and objectives were repeated and that the student did not achieve the master levels listed in the IEP. However she stated that the student did make progress and demonstrated growth by mastering a portion of her goals as indicated in the area of the IEP called "Present Levels of Performance" which demonstrates the student's progression of accomplishment. The special education teacher's assertion is consistent with the written record [Parent Exhibit page D 66 is one of a multitude of exhibits that demonstrate the student did not master her IEP goals but improved toward those goals. This exhibit indicates her mastery increased from 70% to 77% and she more than tripled her functional reading words]. Additionally the special education teacher stated the student's performance on the MAP testing indicate the student made significant progress [District Exhibit page 561]. The special education teacher and the director of student services testified that the MAP testing is correlated with the ISAT which measures the student's acquisition of information taught in the school's curriculum. As such, it is the only normed instrument that measures the student's progress on material taught over time compared to progress made by other students. The student's scores improved to a (9) while the norm improved to (13) in math and her reading score improved to (28) while the norm improved to (15). The special education teacher volunteered that she sat next to the student the second time she took the test. The parent contends that this is the reason the student's scores increased. While this is a variable that could have affected the outcome of the second taking of the test, one would have expected that if the teacher sitting next to the student was the primary variable affecting the student's performance on the second test, the student's scores would have increased uniformly. Instead, while she gained in math, that gain was less than the norm and the gain in reading was more than the norm. Therefore, it is unlikely the teacher sitting next to the student during the second test was the primary variable causing that score to increase. There is the possibility that the teacher sat next to the student only at the time she took the reading test. That, however, would negate the parent's contention that the scores went up because the teacher was sitting next to the student because her math scores went up. Another variable that the parent contends accounts for the

student's gains is that she spent more time taking the second test. Again, if this were the primary variable, one would have expected her gains to be uniform. A third variable not given by either party is that the student's scores went up because she became familiar with the format of the test by taking it another time but that is a variable shared by other students which nullifies that as an advantage for the student. Instead the variable that is most likely to have accounted for the student's improved scores is that the student's hard work and effort paid off and she learned what was taught to her by her teachers. This improvement is consistent with the testimony of the speech/language pathologist who testified that she reported to the May 3, 2007 IEP team that the student had made a break through in sequencing phonemes which is a critical language milestone in being ready to read.

4. The parent contended in the initial due process complaint that the district failed to provide the student with intensive, scientifically based methodologies, necessary for the student to make progress in reading. It was further stated the student needs intensive, multi-sensory, Orton-Gillingham based reading methodology throughout the day. Testimony by the special education teacher, a teacher with extensive training in Orton-Gillingham methodologies, as supported by the written record indicated the district provided the student with intensive, multi-sensory, Orton-Gillingham based reading methodology. The special education teacher used Project Read, Wilson and Herrerty (as well as several supplementary computer programs) all of which are intensive, multi-sensory, Orton-Gillingham based. Additionally, the special education teacher, regular education teacher and the speech/language pathologist each testified that they collaborated to teach the student new words that she needed to know for regular education social studies and science classes.

5. The parent contends the district failed to provide the student with an appropriate IEP. The special education teacher testified that a draft IEP was sent home to the parents prior to the IEP team meeting. The parents participated in the development of the adopted IEP. Changes were made to the IEP when requested by the parent. The parent had no objections to the IEPs when adopted. Testimony and the written record indicate the IEP team gave deference to the parent's desire to keep the student in regular education social studies and science when the special education teacher recommended providing those subjects in the special education instructional program so that she could work on the student's skill acquisition in a curriculum.

6. The parent contends in the issues stated above and in the initial due process complaint that the district failed to provide the student with an appropriate placement. They contend that the proposed placement provides special education instruction only approximately 60% percent of the day. As indicated above, the special education teacher wanted to provide more special education instruction but the IEP team acquiesced to the parent's desire to keep the student in the regular education social studies and science class. Additionally, the complaint contends that the student's neighborhood school does not provide the student with an appropriate peer group socially or academically. All of the witnesses including the parent testified that the student had a broad peer group of students in regular education and special education at her neighborhood school. The parent raised an issue of a disproportionate number of boys to girls (13 to 5) in the regular education classroom but had no objection to the fact that in her private school, per

the testimony of the private school principal, she is the only girl in the class with six boys. The parent complained that in a cross-categorical program like the district program, students pick up the negative behaviors exhibited by students with emotional disorders. The director of student services testified that the students in the district cross-categorical program do not exhibit inappropriate behaviors and that the one student eligible for special education services under the emotionally disturbed category has improved to the degree that he has transitioned to a resource program. All of the witnesses, parent and district, testified that the student is a happy well-adjusted girl and does not exhibit inappropriate behaviors.

7. The parent contends the district failed to address all the student's educational needs (specifically in language arts, math, executive functioning, and social-emotional) in addition to reading.

   - The speech/language pathologist testified that the key to the student's acquisition of reading and language arts is her difficulty decoding, integrating and encoding phonemes (basic sound structures) in their proper sequence. The ability to utilize auditory language is the precursor of developing a facility with written language. She testified that the student did not master her IEP speech/language goals but has made great strides from having difficulty correctly stringing three sounds together to constructing sentences of 6 to 8 words. She stated the student has demonstrated the ability to apply her new skills in other settings. During a group speech/language lesson in her regular education class, the student was able to raise her hand and state a good communication strategy when the speech/language pathologist asked the class about the rules of speech. Additionally the school social worker testified that she heard the student say to four female peers during while entering the school building, "Guys, fighting and arguing is not going to make things better". The social worker testified that the student demonstrated growth in social communication. The special education teacher testified that the student's writing production has improved both in context and volume. The student is able to read stories for meaning and answer who, what, when, where, and why questions with fewer prompts.
   - The student's special education teacher stated that the student is making progress in math. She relies on a number-line to make calculations. The private evaluator stated that the student independently constructed a number-line to assist her during testing. Again, as indicated above, the student demonstrated growth in math on the MAP test.
   - The parent stated the district did not address the student's "executive functioning needs". The district witnesses stated that the student is able to organize herself and plan ahead. She exhibits leadership with her peers. As indicated above, she is able to construct a number line to assist in calculating numbers demonstrating her ability to apply what she has learned in school to other non-school settings. The parent expressed concern that the student was unable to read "functional/ danger words" and there is no IEP goal to address that.. The director of student services testified that the February 2, 2007 IEP team determined that those words could be addressed in the curriculum and did not require a separate IEP goal [District Exhibit page 428]. The parent raised no objection to that strategy at the time. The special education teacher testified that the student was taught and learned the "functional/danger

words". This testimony is supported by the written record [Parent Exhibit page D66].

- The parent contends the district did not address the student's social-emotional needs without specifying the nature of those needs. As stated above, all of the parent and district witnesses testified that the student is a happy well-adjusted person. The district provided the student with group social work service to provide her with an opportunity to share her feeling verbally and address any concerns she might have. At the May 3, 2007 IEP, the district added 20 minutes of individual school social work service per the parent's request. The parent testified that at the time the student had become aware that she had more difficulty reading than other students, started resisting going to school and became more "weepy". The parent also testified that the student was resistant and weepy the first week she attended the private school during the extended school year but she adjusted. It is noted that the parent did not insist on nor did the student receive individual social work service from the private school at that time. The parent quoted the student as saying that she is learning in the new school and will be able to return to her neighborhood school (by name) when she learns to read. It is noted that her neighborhood school is a K-4 school and she is currently in 4th grade. The regular education teacher stated that she observed the student being momentarily weepy occasionally toward the end of the school year and attributed it to the student expressing in effect that after two years of being with the teacher in 2nd and 3rd grade, the student would be moving to a new teacher for 4th grade. The special education teacher stated that the student told her that she was sad because she would not be returning to her (name) neighborhood school after summer. The mother denies having discussed the possibility of sending the student to another school prior to the end of the school year. It is noted that the parents were visiting private schools and seeking a private placement from the district as early as November 30, 2006 [District Exhibit page 313]. It is also noted that several witnesses testified that the student had difficulty with change of routine. The private psychologist testified that he observed no indications from the student's behavior, records that he reviewed or information shared with him by the parents, their attorney or the private school personnel that would indicated the student required an assessment for social-emotional concerns.

8. The parent contends the district failed to consider the parent's private evaluations. The parent obtained three private evaluations. The first one [District Exhibit pages 170-188] from February 2005 was conducted beyond the statute of limitation of this due process hearing. However, the district witnesses testified that they reviewed the evaluation and accepted the findings and found them consistent with the district evaluation at an April 20, 2006 IEP team meeting. The second evaluation [District Exhibit pages 374-405] was conducted in November 2006. District witnesses testify they considered the evaluation and rejected it at the December 12, 2006 IEP team meeting [District Exhibit page 321]. The parent obtained a third private evaluation after they unilaterally placed the student at a private day school and filed the due process complaint resulting in this hearing. The parent submitted that the evaluation to the district on August 20, 2007 to review for mediation [District Exhibit 635]. The district witnesses testified that they read the evaluation and found the test results consistent with the district's

assessment. They stated that the student was receiving the services recommended in the report through her instructional program in her neighborhood school. They specifically disagreed with the conclusion that the student requires an educational setting in a day school for children with learning disabilities. It is noted that the private evaluator and the private psychologist who conducted the third evaluation testified that a school program based solely on Project Read was not appropriate for the student but the Wilson reading program used as the curriculum for the private school was appropriate for her. They concluded, therefore, that the neighborhood school program was not adequate to the student's needs. The private evaluator and private psychologist state in their recommendations "(Name of student) requires the services of a reading specialist trained in teaching principles and methods such as Orton Gillingham" [District Exhibit page 642]. That is precisely what the neighborhood school provides the student. It is noted that nowhere in the private report does it state only the Wilson reading program should be used or that any Orton based program can be used successfully with the student except the Project Read program. It is also noted that the private evaluator and private psychologist were furnished information about the neighborhood school program by the parents. It appears they were not given all of the student's records. Specifically, the private evaluator did not have the student's IEP. Neither private witness was aware that the neighborhood school had the Wilson as well as the Herrerty reading programs in addition to a wide array of assistive technology to supplement those programs. Further, the private evaluator did not attempt to teach the student using Wilson or Project Read. She stated that she gave the student an informal list of words to determine whether the student could read them but she did not attempt to teach the student any of the unknown words and therefore had no assessment of the student's response to intervention. Additionally the private evaluator stated that she saw but only glanced at the student's prior evaluations. She said that she would expect the student to make 9 months progress in a year. This statement is a stand-alone statement that is not contained in the written report, not backed up by scientifically researched data and is not imperially based on student's response to intervention. She also stated that an extended school year would assist in achieving that growth. The private psychologist was not asked whether he attempted to assess the student's response to intervention because by his own testimony he spent about 20 minutes with her administering only the Digit Span subtest of the WISC-IV and the Grooved Pegboard Test. It is unusual to give only one subtest of the WISC but the private psychologist stated that he selected that instrument to assess the student's memory because he had seen that listed as one of her weaknesses. That comment is curious because the Digit Span subtest was not designed as a stand-alone instrument to measure memory. He stated that he would expect the student to make three-quarters to a year of growth in reading per year. Again, this statement is a stand-alone statement that is not contained in the written report, not backed up by scientifically researched data and is not imperially based on student's response to intervention

9. The parent presented the principal of the private special education day school as a witness. He stated that prospective students spend one or two days at the school as part of an intake process. He recalled that the student spent one day at the school but did not recall the date. The mother testified that she recalled the date because it was cut short to make sure the student could get back to her neighborhood

school to celebrate her birthday with her classmates. The principal testified that he knows the student in his role as principal and as her part-time extended school year teacher during the summer of 2007. He stated the school is on the Illinois State Board of Education list of approved school for students with learning disabilities. The school only accepts student with average to above average intelligence who have learning disabilities and would benefit from an intensive, multi-sensory, Orton-Gillingham type program. The school uses the Wilson reading program for all students as its primary curriculum source and endeavors to achieve the Illinois curriculum standards through Wilson. The school uses small group and one-on-one instruction. It has state of the art technology including books-on-tape, Franklin Spellers and supplementary computer based programs. It is noted that books-on-tape and Franklin spellers were state of the art about 30 years ago, the supplementary computer based programs are limited compared to the student's neighborhood school and the principal's knowledge of computer based programs and instruction appears limited.. However, this does not negate the private school as an appropriate placement for the student. It is only noted here to point out an inconsistency. The school has certified special education and regular education teachers. It has an occupational therapist, speech/language pathologist, social worker and technology specialist of staff. The special education teacher has training in but is not certified in the Wilson program. The principal testified that the school does not provide each student with an IEP because the school's goals and objectives are applicable to all students at the school and all students will benefit from the Wilson program. He stated all students are provided an IOP with Wilson generated goals and objectives. Adjustments are made within the program on a diagnostic/prescriptive basis to accommodate the individual needs of students. All students receive group social work service in the form of instruction and coaching in six "success attributes": self-awarness, perseverance, pro-activity, goal setting, emotional stability and effective use of resources [Parent Exhibit F55]. Individual social work service is available, but the student is viewed as a happy, well-adjusted student and is not receiving individual social work services. The student benefited from the extended school year program [Parent Exhibit F20] and continued to make progress at the start of the current school year [Parent Exhibit 31]. The principal testified that it was safe to conclude that the progress the student is currently exhibiting is a result of her being in the extended school year program. He testified that the school was an appropriate placement for the student with one of the advantages being that all the students have the similar abilities and disabilities. It is curious that he emphasized the value of the school having a homogenous group of students while the general school goals emphasis embracing diversity [Parent Exhibit 30]. There is another curious contradiction to the principal's testimony. The schools mission statement, under values and beliefs, states that the IEP is the cornerstone of each student's personalized curriculum. This does not square with the principal's testimony that the school does not use IEPs.

10. The mother testified that she did not accept the district offer for an extended school year program for the 2007 summer because she knew the student's special education teacher would not be teaching and did not know whether the extended school year teacher would be certified. She also stated that she knew the students who would be in the program including a new boy with autism. She did not want her daughter exposed to the behaviors he exhibits. Additionally, she said that she

did not know the goals and objectives the district would have for the extended school year. It is curious that one of the criticisms the parent has of the district is that the IEP goals remain the same from year to year and then contends that the extended school year IEP goals were not known. The director testified that a highly qualified teacher was employed for the extended school year program. The mother testified that the student does not have a functional reading vocabulary. This is contradicted by the testimony of district personnel and the written record.

11. The parent's attorney stated that the district program in the neighborhood school was more restrictive than the special education day school. She stated that the student is isolated by one-on-one adult instruction within the special education class and the regular education class. Additionally she stated that the student is frequently removed from the regular education class. These statements are contrary to all the testimony by district witnesses and has no foundation in the written record

12. This due process hearing consisted of three days of testimony and over a thousand pages of evidence. The only procedural violation the parent raised was the allegation that the district failed to adequately consider the private evaluation tendered by the parent. The testimony of district witnesses and the written record indicated the student made progress toward achieving her IEP goals but did not achieve mastery of those goals The parents contend the student's progress was too little to constitute a free appropriate education and that the student is currently demonstrating progress in achieving mastery of the private school's goals. The district contends the progress is attributed, in large measure, to her participation in a structured 5-day per week, extended school year program over the summer of 2007 and is a continuation of the growth she exhibited in her neighborhood school in May 2007. The district offered the student more special education and related services and provided those services to the extent allowed by the parent. The neighborhood school has more special education personnel with more experience, more related services, more instructional materials and more in the way of supplementary assistive technology available to the student than the private school.

13. The parents refused additional special education instructional time in the neighborhood school to keep her isna regular education class and refused an extended school year program in the neighborhood school. They have placed the student unilaterally in a private special education day school and are seeking reimbursement for that placement which would include an extended school year.

## DISCUSSION AND CONCLUSION OF LAW:

The parents are the moving party in this matter. As such, they had the burden of proof in this matter [*Schaffer v. Weast*, 44 IDELR 150 (U.S. 2005)]. The central issue of this matter is whether the district provided the student with an individualized program that provided her benefit and whether that benefit was more than de minimis.

**Whether the district failed to provide the student with a reading program that enabled her to make meaningful progress per 20 U.S.C. 1414(d); 34 CFR 300.320.**
The evidence indicates the student did not achieve mastery of her IEP goals but made progress toward achieving them over the past two years. Her progress started accelerating

in May 2007. The standard appropriateness test in *Rowley* [*Board of Education*, 458 U.S. 176, 102 S.Ct. 3034 (1982)] is that the placement provide "some" benefit. While it is readily evident the student has derived "some" benefit from her neighborhood school placement, the critical question posed by this issue is whether the student has derived more than *de minimis* benefit from that placement [*Polk v. Central Suquehanna Intermediate Unit 16*, IDERL 130 (EHLR 441:130) (3rd Cir. 1988)]. *Polk* noted that in *Rowley* the student made commendable progress in a regular education class so the court was not required to address what substantively constituted benefit. However, in *Polk*, the student had considerably more challenges of a more profound nature than *Rowley* and demonstrated considerably less progress. *Polk* held that IDEA "calls for more than a trivial educational benefit" to confer "meaningful benefit". In *Hall* [Hall v. Vance County Board of Education, 557 IDELR 155 (EHLR 557.155( (4th Cir. 1985)] a 16-year old males student was found to have been denied FAPE because he was passed from grade to grade by the district's policy of social promotion and was functionally illiterate. The facts of this case differ from *Polk* in that the student in this instance has received considerable special education services and was offered more services that were declined by the parent than did the student in *Polk*. Additionally the facts of this case differ from *Hall* in that the student in this instance was not passed from grade to grade by social promotion and this student, as indicated in the <u>Findings of Fact,</u> has made progress toward achieving master of her goals. Additionally, she has developed a functional reading vocabulary. The parent in this case presented a private evaluator who stated the student should make 9 months in one year and a private psychologist who stated the student should make three-quarters to a year of progress per year. However, as indicated above, their testimony was not consistent with their written report and they had incomplete knowledge of the student. Their statements are stand-alone statement not contained in the written report, not backed up by scientifically researched data and are not imperially based on the student's response to intervention. At best their statements appear to be theoretical constructs of expected progress applicable for all students in general. The parent failed to establish the threshold of what constitutes a de minimis standard for this student and therefore failed to substantively define "meaningful progress" for this student. However, the district established that the student is has made slow but persistent progress toward mastery of her IEP goals, is able to apply what she has learned in the classroom to other settings, developed a functional reading vocabulary and successfully interacts with a broad peer group. An application of the law to the facts of this case finds the parents failed to prove that the district failed to provide the student with a reading program that enabled her to make meaningful progress per 20 U.S.C. 1414(d); 34 CFR 300.320.

**Whether the district failed to provide the student with an appropriate IEP per 20 U.S.C. 1412(a); 34 CFR 300.320; 34 300.324; IAC 226.230.**
This issue is without foundation because, as indicated in the <u>Findings of Fact</u> above, the testimony and written evidence indicate the district provided the student with an appropriate IEP per 20 U.S.C. 1412(a); 34 CFR 300.320; 34 300.324 and IAC 226.230.

**Whether the district failed to provide the student with an appropriate placement per 20 U.S.C. 1412(a)(5); 34 CFR 300.115.**
This issue is without foundation because, as indicated in the <u>Findings of Fact</u> above, the testimony and written evidence indicate the district provided the student with an appropriate placement per 20 U.S.C. 1412(a)(5) and 34 CFR 300.115.

A duly constituted IEP team [23 Illinois Administrative Code 226.210] followed all procedural safeguards in conducting and developing the May 2, 2007 IEP [23 Illinois Administrative Code 226.230] and making a placement recommendation [23 Illinois Administrative Code 226.240].

**Whether the district failed to address all the student's educational needs (specifically in language arts, math, executive functioning, and social-emotional) in addition to reading per 20 U.S.C. 1414(d); 34 CFR 300.320.**
This issue is without foundation because, as indicated in the <u>Findings of Fact</u> above, the testimony and written evidence indicate the district adequately addressed the students language arts, math, executive functioning, and social-emotional needs per 20 U.S.C. 1414(d) and 34 CFR 300.320.

**Whether the district failed to adequately consider private evaluations tendered by the parent per 34 CFR 300.324.**
This issue is without foundation because, as indicated in the <u>Findings of Fact</u> above, the testimony and written evidence indicate the district considered all the private evaluations per 34 CFR 300.324.

**The parent desires the hearing officer order the district to provide the student with a special education placement in a private special education day school such as the Private Special Education Day School she currently attends and reimburse the parents for the tuition costs of that placement since June 2007.**
This request is unreasonable because it is without factual and legal foundation. The offered but the parents refused additional special education instructional time in the neighborhood school. They insisted on keeping her is a regular education for social studies and science rather than having her in the special education instructional program for that time. Additionally, they refused the district's offer to provide the student with an extended school year program in her neighborhood school. The parents unilaterally placed the student in a private special education day school and are seeking reimbursement for that placement which would include an extended school year.

**The district desires the hearing officer find the least restrictive placement in which the student can obtain a free appropriate public education is the one offered her by the district in her neighborhood school per her May 3, 2007 IEP**
The district has demonstrated good faith in attempting to work with the parents to provide the student with free appropriate public education in the least restrictive environment. The student has made progress toward achieving mastery of her IEP goals. While the student's and the neighborhood school's efforts did not result in her achieving 100% mastery of her IEP goal, it would be inaccurate, as well as unfair to the student and her school, to conclude that achieving 77% mastery of an IEP goal is a trivial accomplishment. Therefore, an application of the law to the facts of this case confirms the district has provided the student with a free appropriate public education and the May 3, 2007 is reasonably calculated to insure the student continues making progress and derives meaningful benefit from her special education placement in her neighborhood school.

**Decision and Order:**

1. The district is the prevailing party in this due process hearing and need take no further action in this matter.

**Right to request clarification:**
Section 14-8.02a (h) of the School Code, allows the hearing officer to retain jurisdiction after the issuance of the decision for the sole purpose of considering a request for clarification. A request for clarification must be submitted to me within five (5) days after receipt of the decision. The request for clarification shall specify the portions of the decision for which clarification is sought and a copy of the request shall be mailed to the other parties and to the Illinois State Board of Education. The request shall operate to stay the implementation of those portions of the decision for which clarification is sought. I shall issue a clarification of the specific portion of the decision or issue a partial or full denial of the request in writing within ten days of receipt of the request and mail copies to all parties to whom the decision was mailed.

**FINALITY OF DECISION:**
This decision shall be binding upon all parties.

**RIGHT TO FILE CIVIL ACTION:**
Any party to this hearing aggrieved by the final decision has the right to commence a civil action with respect to the issues presented in the hearing. Pursuant to 105 ILCS 5/14-8.02(I) that civil action shall be brought in any court of competent jurisdiction within 120 days after this decision was mailed.

**DATE OF DECISION AND ORDER:**
This Decision and Order rendered this 7th day of November 2007.

*James a. Wolter EdD*
James a. Wolter, EdD
Impartial Due Process Hearing officer

## CERTIFICATE OF SERVICE

**In Matter of** Sarah D███ v. Aptakisic-Tripp CCSD 102
ISBE Case Number: 2008-0022

The following parties have been served a copy of the Decision and Order in the above matter by certified mail:

7003 0500 0004 3387 6808

        Courtney Stillman, Esq.
        Monahan and Cohen
225 W. Washington Street, Suite 2300
        Chicago, Il 60606

7003 0500 0004 9709 6137

        Jay Kraning, Esq.
Hodges, Loizzi, Eisenhammer, Rodick & Kohn
3030 Salt Creek Lane, Suite 202
Arlington Heights, Il 60005

7003 0500 0004 3387 6815

        Andrew Eulass, Esq.,
    ISBE Due Process Coordinator
        100 North First Street
     Springfield, Il 62777-0001

_[signature]_                                          11/7/2007
James A. Wolter, EdD                       Date