IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES and LEE ANNE D., Individually and as Next Friends of Sarah D., a Minor, Plaintiffs<br><br>v.<br><br>Board of Education of Aptakisic-Tripp Community Consolidated School District No. 102 and Illinois State Board of Education, Defendants. | Case No. 07 C 7018 |

## AFFIDAVIT OF AMA R. THOMPSON, Ph.D.

I, AMA R. THOMPSON, Ph.D., on my oath, state and depose as follows:

1. I have a Ph.D. in learning disabilities, and I evaluated Sarah D. in June, 2007.

2. Sarah completed subtests from the Woodcock Johnson III, Tests of Achievement (WJ-III) on June 12, 2007 to assess her level of functioning at that time. The Letter-Word Identification subtest required her to read a graded list of real words aloud. The list began with individual letters, progressed to simple two and three letter words then continued to more advanced real words. Sarah was able to read very few words. Those that she read correctly might appear on a first grade sight word list. Her standard score of 70 corresponds to a percentile rank of 2, which indicates that she scored as high as or higher than 2% of individuals in her age group. Sarah also completed the Word Attack Subtest, which required her to read a list of nonsense words. The items of this test resemble phonemic structures present in English words. The test evaluates an individual's phonemic decoding skills: one's ability to "sound-out" new words. Items begin with naming letter sounds, progress to simple two and three letter words and continue to more advanced nonsense words. Sarah was able to read only CVC words (consonant-vowel-consonant, *e.g.* hib) and made errors on the vowel sounds within these words. Her standard score of 81 corresponds to a percentile rank of 11 which indicates that she scored as high as or higher than 11% of individuals in her age group.

3. Review of Sarah's school records indicated that she completed the Wechsler Individual Achievement Test – Second Edition (WIAT-II) in October 2006. Several of the WIAT-II subtests have task demands similar to those of WJ-III subtests. In particular, the Letter-Word Identification subtests from the WJ-III is similar to the WIAT-II Word Reading subtest which requires an individual to identify letters, rhyming words, beginning sounds, and



EXHIBIT C

read aloud from a list of real words that progress from simple to more advanced. Sarah's standard score of 66 corresponds to a percentile rank of 1, which indicates that she scored as high as or higher than 1% of individuals in her age group. The WIAT-II Pseudoword Decoding subtest is similar to the WJ-III Word Attack subtest and requires the examinee to read a list of nonsense words of increasing complexity. Sarah's standard score of 77 corresponds to a percentile rank of 6, which indicates that she scored as high as or higher than 6% of individuals in her age group.

4. Direct comparisons between scores from tests published by different authors should be conducted with caution. Nonetheless, the characteristics of each test and the relationships between the measures suggest that the WJ-III and the WIAT-II assess similar skills. Because the tests are related, some conservative generalizations can be made.

5. The difference in the standard scores from one testing session (October) to the next (June) does not necessarily represent a linear change that corresponds directly to an increase in achievement. In other words, the difference between the standard score of 66 in one administration of the WIAT-II and a standard score of 70 on the latter administration of the WJ-III does not represent significant or adequate academic growth. It would not be appropriate to simply conclude that Sarah's true score has increased by 4 points. It may be more appropriate to conclude that, given the relationship between the instruments, the error inherent in measurement, and the task demands, Sarah's performances are similar at each testing and do not evidence significant changes relative to her same age peers at the time of each testing.

6. A further indicator of similar performance on both tests is based on clinical judgment. On both measures, the level of differentiation, as measured in months of growth, depends on a small number of items. There are very few early items corresponding to primary level words on the WJ-III Word Attack subtest, for example. Scores can increase if the examinee reads one or two additional words. This does not necessarily correspond to significant changes in achievement level or adequate academic growth. Reading achievement is expected to increase with length of schooling. While implementation of intensive intervention programs can produce growth over short periods of time, small changes are not evident using these standardized measures. In this evaluator's opinion, significant changes in reading achievement are not evident. Given Sarah's performance on these standardized measures, it would not be appropriate to conclude that she has made adequate gains in basic reading.

7. Sarah's scores on measures of single word reading have remained essentially stable at the 2nd percentile. Thus, one could argue that Sarah's reading skills have developed, as have her peers', since her standing relative to the peer group has not decreased. However, Sarah's reading skills remain below the functional level, indicating less than adequate development. Furthermore, an appropriate, intensive intervention program should evidence gains relative to peers, rather than development apace with peers. This is especially true when the program is appropriately implemented for two or more years at the primary level ($1^{st} - 3^{rd}$ grade).

FURTHER AFFIANT SAYETH NAUGHT.

Anna R. Thompson, Ph.D.

Subscribed and Sworn to before me this 19 day of March, 2008.

Notary Public

"OFFICIAL SEAL"
Ewa S. Richter
Notary Public, State of Illinois
Cook County
My Commission Expires March 9, 2011